UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| GINETTE SAMSON,<br><br>  Plaintiff,<br><br>v.<br><br>UNITED STATES GOVERNMENT, CHAD MEAD, EMT-FCI Waseca, DEBORAH TRIO, RN-FCI Waseca, TWO UNKNOWN MEDICAL PERSONNEL-FCI Waseca, Ms. PETERSON, Pharmacy Technician-FCI Waseca, and MARY ELLEN RIVERS-GRAHAM-FCI Waseca,<br><br>  Defendants. | Civil No. 11-3463 (DSD/JSM)<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, a former federal prison inmate, has filed a complaint seeking compensation for personal injuries that she allegedly suffered during her imprisonment. (Docket No. 1.) The matter is presently before this Court for initial screening pursuant to 28 U.S.C. § 1915A, and for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1.[1]  For the reasons discussed below, the Court finds that Plaintiff's complaint fails to state a cause of action on which relief can be granted. The Court will therefore recommend that this action be summarily dismissed pursuant to § 1915A(b).

---

[1] Plaintiff did not pay the $350 filing fee required for this action, (see 28 U.S.C. § 1914(a)), but instead filed an application for leave to proceed in forma pauperis, ("IFP"). (Docket No. 2.)  By order dated December 1, 2011, (Docket No. 3), Plaintiff was advised that her IFP application would not be addressed, and her case would not go forward, until after she paid an initial partial filing fee of $350, (i.e., the full statutory fee), pursuant to the formula prescribed at 28 U.S.C. § 1915(b)(1). Plaintiff subsequently paid the required fee, (Docket No. 4), so this case is now ripe for § 1915A screening.

**I.     BACKGROUND**

Plaintiff's current lawsuit stems from a series of medical problems that she allegedly endured while she was confined at the Federal Correctional Institution in Waseca, Minnesota, ("FCI-Waseca").[2] She is attempting to sue several individuals employed at FCI-Waseca, as well as the "United States Government."

Plaintiff alleges that on May 3, 2010, Defendant Chad Mead administered a "PPD test." According to the complaint, "[t]his shot caused her to suffer with intense pain, burning sensation, swelling, and numbness." (Complaint, [Docket No. 1], p. 4, ¶ 7.) Plaintiff claims that Mead administered the "PPD test" incorrectly, and she suffered various injuries "[a]s a direct result of his medical negligence." (Id., p. 4, ¶ 8.)

During the next few weeks after Defendant Mead administered the "PPD test," Plaintiff allegedly received medical attention on several occasions from Defendant Deborah Trio, a prison nurse, and two other unknown health care providers. They allegedly noted that Plaintiff was suffering an adverse reaction to the test, but said "that there was 'nothing to worry about.'" (Id., p. 4, ¶s 9-11.) Plaintiff claims that Defendant Trio and the other two health care providers "misdiagnosed the positive test [for tuberculosis] as negative," and "were negligent in their failure to notice an obvious medical condition." (Id., p. 4(a), ¶ 23.)

In August 2010, Plaintiff sent a written note to another health care provider at FCI-Waseca, Defendant Mary Ellen Rivers Graham. In that note, Plaintiff requested medical attention for "a coughing problem" that prevented her from sleeping at night. (Id., p. 4(b),

---

[2] Plaintiff has recently informed the Court that she is no longer confined at FCI-Waseca, but she is now confined at the Sherburne County Jail in Elk River, Minnesota, on an "immigration hold." (Letter from Plaintiff dated March 19, 2012; [Docket No. 9].) This change in Plaintiff's status has no direct bearing on the disposition of the present action.

¶ 24.) Plaintiff claims that Graham "was negligent regarding Plaintiff's condition," and that she continued to suffer from "an obvious chronic cough, along with misdiagnosed test" results. (Id., p. 4(b), ¶s 24-25.)

In September 2010, Plaintiff was diagnosed with tuberculosis, and she started receiving treatment for the disease. Part of the treatment included medications that were administered by Defendant Ms. Peterson, a pharmacist at FCI-Waseca. Plaintiff claims that Defendant Peterson made a "mistake" by stopping her medications a week early. (Id., p. 4(b), ¶s 27-31.)

Plaintiff is now attempting to sue the named Defendants for their allegedly negligent treatment of the various medical problems that she experienced in 2010, while she was incarcerated at FCI-Waseca. Plaintiff has summarized her claims as follows:

> "It is based on FCI's failure to properly and timely diagnose Plainitff [sic] with latent TB that she suffered with a chronic, persistant [sic] cough, night sweats headaches, fatigue, shortness of breath, diziness [sic], sleeplessness. She also suffered with stress, panic and anxiety attacks, fear and hopelessness which in turn Plaintiff has had to take additional medication to help her cope with FCI's misdiagnoses and their negligent treatment of her condition."

(Id., p. 4(b), ¶ 32.)

Simply put, this is a medical malpractice case. Because Defendants are federal employees who are being sued for torts they allegedly committed during the course of their employment, Plaintiff is seeking relief under the Federal Tort Claims Act, ("FTCA"), 28 U.S.C. §§ 2671, et seq. She has applied for administrative relief under the FTCA, but her claim was denied. (See Complaint, Attached Exhibits.) Plaintiff is now seeking a damage award under the FTCA in the amount of $50,000.000.00.

## II.   DISCUSSION

Because this action was brought by a prisoner who is seeking redress from government employees and entities, Plaintiff's complaint is subject to preliminary "screening" pursuant to 28 U.S.C. § 1915A. That statute, which is part of the Prison Litigation Reform Act of 1995, ("the PLRA"), requires federal courts to screen the pleadings in all civil actions brought by prisoners against governmental agencies and employees "before docketing, if feasible or, in any event, as soon as practicable after docketing." 28 U.S.C. § 1915A(a). The court must determine which aspects of the pleading are actionable and should be allowed to proceed. If a prisoner-plaintiff has failed to plead a claim on which relief can be granted, the action must be summarily dismissed. 28 U.S.C. § 1915A(b).[3]

In this case, Plaintiff is attempting to state a cause of action under the FTCA. The FTCA provides an express waiver of the federal government's immunity for claims based on certain torts committed by federal employees. United States v. Orleans, 425 U.S. 807,

---

[3] The Court recognizes that Plaintiff is no longer serving a federal prison sentence, but she was a prisoner when she commenced this action. Furthermore, even if Plaintiff's complaint were not subject to screening under § 1915A, it still would be subject to sua sponte dismissal pursuant to 42 U.S.C. § 1997e(c)(1), which provides that:

> "[t]he court shall on its own motion or on the motion of a party dismiss any action brought with respect to prison conditions under 42 U.S.C. § 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility if the court is satisfied that the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief."

Also, because Plaintiff applied for IFP status, rather than tendering the statutory filing fee with her complaint, (see n. 1, supra), this action is subject to sua sponte review under 28 U.S.C. § 1915(e)(2)(B).

813 (1976). The FTCA further provides that an individual federal employee can<u>not</u> be sued for torts committed during the course of his or her employment. <u>Knowles v. United States</u>, 91 F.3d 1147, 1150 (8th Cir. 1996) ("When someone is injured by a tort committed by an employee of the United States who is acting within the scope of his employment, that employee cannot be sued"). The exclusive legal remedy available to a party who has been injured as a result of a tort committed by a federal employee is a claim against the United States itself, brought under the FTCA. <u>Id</u>. ("the injured person must sue the United States which is liable in its employee's stead").

FTCA claims are subject to, and governed by, the substantive law of the state in which the claims arose. 28 U.S.C. § 1346(b). The medical malpractice tort claims that Plaintiff is attempting to bring in this action arose in Minnesota. Therefore, Plaintiff's malpractice claims are governed by Minnesota state law.

Minn.Stat. § 145.682 is a Minnesota law that applies to all medical malpractice actions brought in Minnesota, including malpractice claims brought under the FTCA. <u>Oslund v. United States of America</u>, 701 F.Supp. 710 (D.Minn. 1988); <u>Bellecourt v. United States</u>, 784 F.Supp. 623, 636 (D.Minn. 1992), <u>aff'd</u> 994 F.2d 427 (8th Cir. 1993), <u>cert</u>. <u>denied</u>, 510 U.S. 1109 (1994); <u>Anderson v. United States of America</u>, No. Civ. 5-96-235 JRT/RLE, 1998 WL 92460 (D. Minn. 1998). <u>See</u> <u>also</u> <u>Tineo v. Federal Bureau of Prisons</u>, No. 05-724 (ADM/SRN), (D.Minn. 2005), 2005 WL 1745451 at *2 ("[m]edical malpractice actions brought in Minnesota, including medical malpractice claims brought under the FTCA, are governed by Minn.Stat. § 145.682"); <u>Garcia v. Anderson</u>, No. 08-4731 (ADM/JJG), (D.Minn. 2009), 2009 WL 2900304 at *4 ("[a] federal prison inmate alleging medical negligence under the FTCA must abide by § 145.682"), <u>aff'd</u>, 402 Fed.Appx 150

(8th Cir. 2010) (unpublished opinion).

Section 145.682 requires every plaintiff in a Minnesota medical malpractice case to furnish two affidavits in support of his her or her claims. These two affidavits have been described as follows:

> "The first affidavit ('expert review affidavit') <u>must be submitted with the complaint</u> and state that before commencing the lawsuit, plaintiff's attorney reviewed the facts of the case with a medical expert who believed that at least one defendant named in the suit deviated from the applicable standard of care and thereby injured the plaintiff.... [4]
>
> The second affidavit ('expert disclosure affidavit') must be served upon the defendant within 180 days after commencement of the suit and identify each expert plaintiff intends to call at trial, disclose the substance of the facts and opinions to which the expert will testify, and provide a summary of the grounds for each opinion."

<u>Bellecourt</u>, 784 F.Supp. at 636, citing Minn.Stat. § 145.682, subd. 2, subd. 3, and subd. 4, (emphasis added). If a medical malpractice complainant fails to meet either one of the two affidavit requirements set forth in § 145.682, the statute provides for "mandatory dismissal." Minn.Stat. § 145.682, subd. 6; <u>Stroud v. Hennepin County Medical Center</u>, 556 N.W.2d 552 (Minn. 1996); <u>Lindberg v. Health Partners, Inc.</u>, 599 N.W.2d 572 (Minn. 1999). <u>See</u> also <u>Stackhouse v. United States</u>, No. 09-839 (PJS/JSM) (D.Minn. 2011) (Report and Recommendation dated February 11, 2011, adopted by Order dated March 1, 2011), 2011 WL 820885 at *24, ("[t]he penalty for failing to comply with Minn.Stat. § 145.682, subds. 2 and 4 is mandatory dismissal").[5]

---

[4] If the plaintiff is not represented by counsel, he must file his or her own affidavit of expert review in lieu of an attorney's affidavit. Minn.Stat. § 145.682, subd. 5.

[5] A plaintiff can be excused from the statutory affidavit requirements if the defendant's liability can be established without any expert testimony. Minn.Stat. § 145.682, subd. 2; <u>Bellecourt</u>, 784 F.Supp. at 637. If, for example, a surgeon clearly amputated the

Here, Plaintiff has not complied with Minn.Stat. § 145.682, because her complaint is not accompanied by the expert review affidavit that is required by § 145.682, subd. 2(1) and subd. 3(a). Without that affidavit, Plaintiff's complaint fails to state an actionable FTCA malpractice claim.

Plaintiff was warned several months ago that this action was destined for summary dismissal, unless she complied with the affidavit requirements prescribed by Minn.Stat. § 145.682. (See Order dated December 1, 2011, [Docket No. 3], p. 3, n. 2.) Plaintiff subsequently acknowledged the affidavit requirement, and asked for an opportunity to comply with that requirement. (See "Motion for Extension to Produce Evidence from Medical Expert," [Docket No. 6].) That request was granted, and Plaintiff was provided a very generous amount of time – nearly three additional months – to file the requisite affidavits. (See Order dated January 9, 2012, [Docket No. 7].) Plaintiff was explicitly informed, however, that no further extensions would be granted. (Id.)

Plaintiff has recently advised the Court she does not expect to satisfy the mandatory affidavit requirements at any time in the foreseeable future. (See Letter from Plaintiff dated March 19, 2012, [Docket No. 9]. Thus, the Court now concludes that the FTCA medical malpractice claims that Plaintiff is attempting to bring in this action cannot be entertained at this time. Because Plaintiff has not satisfied the affidavit requirement prescribed by Minn.Stat. § 145.682, she has failed to plead a cause of action on which relief can be granted, and dismissal of this action is mandatory. The Court will recommend, however,

---

wrong limb, expert testimony presumably would not be required to establish negligence. In the present case, however, it is not self-evident that the Defendants were negligent, and the Court finds that Plaintiff could not prove her medical malpractice claims without presenting expert witness testimony.

that this action be dismissed without prejudice, so that the dismissal of this action will not, by itself, necessarily bar any future medical malpractice action that Plaintiff might attempt to bring in the future – if she is ever able to satisfy the statutory affidavit requirements.[6]

Finally, because Plaintiff has failed to state a cause of action on which relief can be granted, the Court will recommend that her pending application to proceed in forma pauperis, (Docket No. 2), be denied as moot. See 28 U.S.C. § 1915(e)(2)(B)(ii); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam) (an IFP application will be denied, and the action will be dismissed, if the IFP applicant has filed a complaint that fails to state a claim on which relief may be granted").

### III. RECOMMENDATION

Based upon the above, and upon all the files, records, and proceedings herein,

**IT IS RECOMMENDED** that:

1. Plaintiff's application to proceed in forma pauperis, (Docket No. 2), be **DENIED AS MOOT**; and

2. This action be summarily **DISMISSED**, without prejudice, because Plaintiff's complaint fails to state a cause of action on which relief can be granted.

Dated:      April 2, 2012

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

[6] The Court recognizes that as a practical matter the dismissal of this action, even without prejudice, will almost certainly preclude Plaintiff from filing another FTCA lawsuit based on the events described in her current complaint, because of the six-month statute of limitations that applies to FTCA actions. See 28 U.S.C. § 2401(b). The fact remains, however, that if Plaintiff cannot satisfy the state statutory affidavit requirements, then she simply cannot bring an FTCA medical malpractice claim.

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **April 16, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  A party may respond to the objecting party's brief within 14 days after service thereof.  All briefs filed under this rule shall be limited to 3500 words.  A judge shall make a de novo determination of those portions of the Report to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.